# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUTH DEMICHELE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 6294 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruth DeMichele ("plaintiff" or "DeMichele") filed a single count complaint against the United States of America ("defendant" or the "United States") under the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq.* This Court has jurisdiction over this case pursuant to 28 U.S.C. §1346. Defendant's motion for summary judgment is presently before this Court. For the following reasons, defendant's motion is granted.

**I.     LOCAL RULE 56.1 STANDARD**

Pursuant to Local Rule 56.1("L.R. 56.1"), a motion for summary judgement must be accompanied by "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The material facts must be set forth in short numbered paragraphs. Each party opposing a summary judgment motion must serve and file a concise response to the movant's statement in "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed." L.R. 56.1(b)(3)(A). In the response, the non-movant must respond to each numbered paragraph in the movant's statement and include, in the case of any disagreement, "specific references to the affidavits, part of the record, or other supporting materials relied upon." L.R. 56.1(b)(3)(B). In addition, the non-movant must submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other

supporting materials relied upon." L.R. 56.1 (b)(3)(C). L.R. 56.1 warns litigants that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.*

Defendant's motion is accompanied by a statement of material facts. However, plaintiff failed to respond in the required paragraph-by-paragraph form. Plaintiff also failed to submit her additional facts in paragraph-by-paragraph form. Rather, plaintiff incorporates factual allegations into the body of her response in opposition to defendant's motion, often without specific reference to the affidavits, parts of the record, or other supporting materials relied on. Plaintiff attaches the complaint, three deposition transcripts, and the affidavit of Steve O'Neill (the "O'Neill Affidavit") as exhibits to her response.

A district court has broad discretion to require strict compliance with L.R. 56.1. *Amakua Dev. LLC v. Warner*, 2007 U.S. Dist. LEXIS 49952, *4 (N.D. Ill. July 10, 2007) (collecting Seventh Circuit cases). Moreover, the Seventh Circuit has "consistently held that a failure to respond by the non-movant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Accordingly, to the extent defendant's material facts conform to L.R. 56.1 and are adequately supported by the record, they are admitted. L.R. 56.1 (b)(3)(C). Moreover, because plaintiff's additional facts do not conform to the requirements of L.R. 56.1, they will not be considered by this Court. *Frazier v. American Pharm. Partners*, 2007 U.S. Dist. LEXIS 93582, *5 (N.D. Ill. Dec. 20, 2007) (refusing to consider facts set forth in long unnumbered paragraphs organized under broad subject headings). Therefore, unless otherwise stated, the following is taken entirely from defendant's statement of facts:

**II.    FACTS**

Plaintiff seeks damages for injuries she sustained on the morning of December 15, 2004, at the Palatine, Illinois post office facility (the "Palatine Post Office"). At the time of plaintiff's accident, the floors of the facility's hallway and lobby area were partially covered with mats,

alternatively referred to as rugs and/or runners. In the wintertime, additional mats were placed on the floors in anticipation of snow melt and debris. The mats were placed to soak up snow and dirt before postal customers reached the lobby. The placement specifically contemplated preventing patrons from slipping on wet tiles.

DeMichele has been a customer at the Palatine Post Office for more than 36 years. She comes to the facility one to three times per month. On the date of plaintiff's accident, the Palatine Post Office was the second highest post office in sales in the Chicagoland area. It is estimated that every day more than 1,000 customers walk down the long hallway and into the main lobby area of the facility.

Plaintiff entered the Palatine Post Office around 10:30 a.m. on December 15, 2004. She was carrying a two to three pound purse and fifty to seventy envelopes. According to the accident report attached to defendant's motion, DeMichele "tripped on a rug that was left curled up from [a] previous customer, which caused her to fall to the ground." DeMichele later testified that the accident occurred when she tripped over a mat that was folded over in the corner on her way into the lobby area of the Palatine Post Office. However, plaintiff also testified that she did not see the mat prior to the accident because she was looking straight ahead, and did not look down at the rug. DeMichele does not know how long the mat had been curled over. As a result of the fall, plaintiff injured her head, knee and left breast. In the complaint, DeMichele alleges that all or some of these injuries are permanent and prohibit her from following her usual activities of daily living.

Plaintiff testified that there was only one other person in the room when she fell. That individual is identified in the accident report as Steve O'Neill ("O'Neill"), another customer at the Palatine Post Office. O'Neill came to plaintiff's aid after her fall.

Coincidentally, December 15, 2004 was one of the four days per year that a massive, thorough inspection of the Palatine Post Office is performed. Prior to plaintiff's entry into the post

office, James Rogan, a general maintenance mechanic ("Rogan"), and the Postmaster of the Palatine Post Office, Richard Culleton ("Postmaster Culleton"), performed a quarterly inspection of the facility, including the lobby.  Rogan is required to perform a complete inspection of the entire postal facility with the Postmaster or other upper-level official once per quarter.  The purpose of the inspection is to insure that all areas of the post office are clean, neat and safe for occupancy.  Also on the morning of December 15th, Rogan performed janitorial duties in the lobby area on behalf of an absent custodian.

      Rogan and Postmaster Culleton started their inspection in the lobby area at approximately 10:00 a.m.  They spent five to ten minutes in the lobby checking for any potential safety issues from chipped tiles to metal plating on the doors.  Rogan recorded any safety concerns found in the lobby area and throughout the building.  Nothing in Rogan's report, which was also signed by Postmaster Culleton, indicates that the mats in the lobby area or hallway were curling or bunching up at the time of the inspection.  In fact, the report shows that the floors in the lobby area were in satisfactory condition.  Postmaster Culleton later testified that he did not see any defects or hazardous conditions relating to the mats in the lobby area, and did not find the mats to be in any kind of deteriorated condition.  Around 10:30 a.m., shortly after leaving the lobby area, Postmaster Culleton was called away from the inspection due to plaintiff's accident in the lobby.  Following plaintiff's accident, Rogan checked all the runners in the Palatine Post Office and determined that none of the mats were bunching or curling up.

      In his deposition, Rogan characterized the mats as consistently in excellent condition.  He described the mats as "a tight-weave, commercial-type carpet."  Postmaster Culleton testified that the rugs are "rubber backed, standard mats that [the post office has] leased from an authorized contractor for a number of years."  The mats are held down by their own weight.  They are difficult to move because they are designed to not move.  However, the mats are regularly moved for mopping and sweeping the surrounding area.  DeMichele stated in her

deposition that the mat which caused her injuries was a "heavy rug." Because of its weight, DeMichele doubts that she could have caused the mat to raise up further after she tripped on it.

The mats at the Palatine Post Office are leased from the Cintas Company ("Cintas"). According to Rogan's testimony, Cintas employees replace the existing rugs with clean rugs every Wednesday. Plaintiff's accident occurred on a Wednesday morning, approximately three hours after the Cintas employees replaced all the mats. Sometime before 8:00 a.m., after the Cintas employees change the mats, Rogan straightened out the rugs to make sure that all the mats were properly aligned.

Rogan aligned the mats at least once a day. This involved lining them up in a straight line so that customers would be visually directed to the front lobby. Straightening was also required after taking the rugs outside to shake off debris and after cleaning. Generally, daily straightening did not involve getting rid of bunches or buckles, but rather fixing the angle of the rug. Throughout the course of the day, if Rogan saw a misaligned runner, he would straighten it out. He testified that this was sometimes caused by customers dragging heavy boxes across the post office floor.

Rogan stated that he was not aware of any complaints about the mats in the lobby on or before December 15, 2004. Rogan was not aware of anyone tripping over a mat before December 15, 2004, nor was he aware of any other problems with the mats.

Postmaster Culleton testified that prior to DeMichele's accident, there was never any concern that the runners or floor mats would bunch or curl up. He was not aware of anyone else tripping on the runners or floor mats at the Palatine Post Office, either before or after DeMichele's accident, and could not recall a situation where the floor mats in the Palatine Post Office curled or bunched up.

### III.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact precluding summary judgment, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004) (citations omitted). However, the court is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citations omitted).

The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). The movant may satisfy this burden by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Because the primary purpose of summary judgment is to dispose of claims that have no factual support, the non-moving party may not rest on the pleadings but must set forth specific material facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). A bare contention that an issue of fact exists is insufficient to create a factual dispute. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). Rather, a material fact is one which might affect the outcome of the suit. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). Thus, the non-movant will successfully oppose summary judgment only where she presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000); *see, also Celotex Corp,* 477 U.S. at 322 (holding that summary judgment is proper

against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.")

## IV. LEGAL ARGUMENT

Plaintiff's accident occurred in Illinois. We therefore apply Illinois law to this case. 28 U.S.C. §§1346(b)(1) and 2674; *see, also Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991). As a public entity, the United States is protected by the Illinois Local Government Tort Immunity Act, 745 ILCS §10/3-102. *See, also Cooks v. United States*, 815 F.2d 34, 35 (7th Cir. 1987). Thus, to prevail on her claim, DeMichele must "prove that she was owed a duty of care by the United States, that a breach of this duty proximately caused her injuries, and that the United States had actual or constructive notice of the allegedly unsafe condition in time to correct it." *Stewart v. United States*, 918 F. Supp. 224, 226-27 (N.D. Ill. 1996) (citations omitted); *see, also Pavlik v. Wal Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001) (stating elements for negligence claim under Illinois law).

The United States claims plaintiff cannot meet this burden. It is undisputed that DeMichele was a business invitee at the Palatine Post Office. Therefore, the postal service owed DeMichele a duty of care. However, the United States seeks summary judgment on the grounds that there is no evidence in the record that the postal service had actual or constructive notice of the allegedly defective condition of the mat within a reasonable time to correct it. Alternatively, defendant claims that if a buckle or curl in the mat did in fact cause plaintiff's injury, the unsafe condition was so open and obvious that plaintiff should have noticed it and taken steps to avoid tripping on the mat.

We begin by analyzing the evidence before this Court on the issue of notice.

### A. Actual Notice

In order to prevail on her claim, DeMichele must show that postal service had actual or constructive notice of the defective mat in time to correct it. *See* 745 ILCS §10/3-102(a);

7

*Stewart*, 918 F. Supp. at 226.  The United States asserts that there is no credible evidence of prior falls or complaints about the mats, and therefore it is entitled to summary judgment on this issue.  Defendant also cites the testimony of Rogan and Postmaster Culleton, as well as the admitted facts relating to the quarterly inspection and the mat itself, to negate plaintiff's allegations relating to notice.  We must determine if there is competent evidence in the record that contradicts these assertions and would enable the trier of fact to conclude that the postal service had actual or constructive notice.  *See, e.g. Stewart*, 918 F. Supp. at 227 ("As [plaintiff] bears the burden of demonstrating actual or constructive notice, she cannot survive summary judgment unless she can rebut this evidence proffered by the defendant.") (citations omitted); *Burman v. United States*, 1994 U.S. Dist. LEXIS 194, *2 (N.D. Ill. Jan. 12, 1994) (granting summary judgment based on absence of prior complaints or accidents with mats).

With regard to actual notice, plaintiff relies on Rogan's testimony and the O'Neill Affidavit to establish a question of fact.  DeMichele cites Rogan's testimony that the mats would "curl up" as a result of customers dragging heavy boxes or other materials across the floor and he would "go out there and curl them back down."  Significantly, this "fact" is not set forth in a form that complies with L.R. 56.1 and therefore is not properly before this Court.  *See* L.R. 56.1 (b)(3)(C)*; Frazier*, 2007 U.S. Dist. LEXIS 93582 at *5.  Moreover, as noted in defendant's brief, in subsequent portions of his deposition Rogan clarifies that he has "never seen [the mats] stuck up," bunched or buckled.  This latter testimony is consistent with the fact, deemed admitted, that Rogan was not aware of any problems with the mats prior to plaintiff's accident.  Accordingly, plaintiff cannot rely on Rogan's testimony to create a question of fact regarding actual notice.

Plaintiff's reliance on the O'Neill Affidavit is equally unpersuasive.  According to O'Neill, he was at the Palatine Post Office "about every day" prior to plaintiff's accident.  O'Neill avers that three weeks before the accident new floor mats, including the mat plaintiff tripped and fell on, were placed on the post office floor.  In his affidavit, O'Neill states that "[t]he new floor mats

8

were not made of hard heavy materials but were made of a soft, light and loose material." O'Neill avers that the new floor mats "became a safety hazard" that was "not open and obvious." According to O'Neill, "for at least three weeks prior to plaintiff's fall, the new floor mats by the entranceway where plaintiff fell were always curled-up, bunching up, and moving on the floor every day." O'Neill also states that after the new mats were installed he "saw three postal customers trip on the curled-up floor mats near the entranceway where plaintiff fell."

This Court will not consider statements in the O'Neill Affidavit that lack an adequate factual foundation or would not be admissible at trial. Pursuant to Fed. R. Civ. P. 56(e)(1) "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The Seventh Circuit has made it clear that "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003), citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") Accordingly, the O'Neill Affidavit creates an issue of fact only to the extent that it provides evidence that "would be admissible if offered live on the witness stand." *Watson v. Lithonia Lighting and Nat'l Serv. Indus., Inc.*, 304 F.3d 749, 751-52 (7th Cir. 2002) (refusing to consider affidavit not based on personal knowledge which did not imply the availability of any admissible evidence.)

The O'Neill Affidavit does not establish that O'Neill has personal knowledge of the condition of the floor mats. In the absence of any averments, this Court will not speculate that O'Neill personally inspected the mats, that after examining the mats O'Neill was able to determine the type or condition of the materials used to make the mats, or that O'Neill is uniquely qualified to evaluate the mats' condition and opine that the mats became a safety hazard. *See*

9

*Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) (holding that statements "outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory" do not meet the requirements of Fed. R. Civ. P. 56(e).)

This Court also finds that O'Neill's statements regarding prior accidents do not create a question of fact. O'Neill avers that he witnessed three prior accidents, but does not provide any supporting factual details such as a description of the other customers or the date or time of their accidents. *See Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983), *cert denied*, 465 U.S. 1006 (1984) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") Moreover, while O'Neill states that the prior accidents occurred "near the entranceway where plaintiff fell," he does not link those accidents to the specific mat which caused plaintiff's injury. *See Adduci v. United States*, 1994 U.S. Dist. LEXIS 10359, *7 (N.D. Ill. July 28, 1994) (reasoning that a reasonable jury could not find that a post office was on notice of an unsafe condition where testimony that between ten and twenty people had fallen in front of post office was not linked to the exact spot or crack that caused plaintiff's injury).

Finally, we will not consider statements in the O'Neill Affidavit that conflict with facts deemed admitted. *See* L.R. 56.1(b)(3)(C).[1] For instance, O'Neill avers that the mats were replaced three weeks before plaintiff's accident. However, it is undisputed that Cintas replaced the mats on the morning of December 15, 2004, approximately three hours before plaintiff's

---

[1] The United States also claims that the O'Neill Affidavit conflicts with plaintiff's recollection of the incident. For instance, defendant points out that O'Neill's description of the mat as "soft, light, and made of loose material" cannot be reconciled with plaintiff's statement, made in her deposition, that the mat "is a heavy rug." Defendant argues that, due to plaintiff's failure to file a L.R. 56.1 statement, it is difficult to determine which version of the facts DeMichele is presenting to this Court. While we find this argument persuasive, we do not rely on it in granting defendant's motion.

10

accident. O'Neill also states that he informed "postal employees, including a manager, that customers were tripping on the curled up mats near the entranceway." Because it is undisputed that Rogan had not received any "prior complaints or concerns of runners moving or bunching up" and that no one had ever complained of falling or tripping in the lobby before plaintiff's accident, this statement does not create a question of fact.

Accordingly, and for each of the reasons discussed above, this Court finds that the O'Neill Affidavit does not create a question of fact which would enable plaintiff to proceed past summary judgment. *See Stagman*, 176 F.3d at 995 (non-moving party cannot rely on statements in an affidavit that failed to meet the requirements of Fed. R. Civ. P. 56(e).)

### B. Constructive Notice

Defendant also seeks summary judgment on the grounds that there is no evidence that the Palatine Post Office had constructive notice of the allegedly curled or bunched up mat. Constructive notice is found where "a condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known about it." *Stewart*, 918 F. Supp. at 227, *quoting Burke v. Grillo*, 590 N.E.2d 964, 970 (Ill. App. Ct. 1992); *Finley v. Mercer County*, 529 N.E.2d 635, 637 (Ill. App. Ct. 1988). Having determined that plaintiff cannot rely on statements in the O'Neill Affidavit that fail to meet the requirements of Rule 56(e) to oppose defendant's motion, we must look for any additional evidence plaintiff puts forth to show a question of fact as to constructive notice.

Plaintiff claims, without supporting citation, that Rogan's daily inspection and aligning of mats "certainly" demonstrates constructive notice. We disagree. It is undisputed that Rogan aligned the mats at least once a day. However, this entailed lining them up in a straight line, or repositioning the mats after cleaning. There is no competent evidence that Rogan's straightening routinely involved unbuckling the mats.

Assuming that a defective mat caused plaintiff's fall, there is no evidence that the mat had

11

been curled up or bunched for more than a matter of minutes. Rogan and Postmaster Culleton inspected the lobby moments before plaintiff's accident and concluded the floors were in satisfactory condition. In *Stewart v. United States*, a case relied on by both parties, the plaintiff brought a claim against the United States for injuries she suffered after tripping on a mat outside the lobby doors of a post office. 918 F. Supp. at 225. Defendant moved for summary judgment on the grounds that plaintiff could not demonstrate actual or constructive notice. *Id*. at 227. Relying, in part, on evidence that a postal custodian checked the placement of the mats on the morning of plaintiff's accident, and therefore any unsafe condition could not have existed for more than a day, the court granted defendant's motion. *Id.* The *Stewart* court further found that plaintiff's inability to point to any evidence in the record supporting a finding of constructive notice prevented her from proceeding past summary judgment. *Id.* These same facts are present here, and compel the entry of summary judgment in favor of defendant. *See id.*

This Court is further persuaded by defendant's argument that the Palatine Post Office's status as a public entity, coupled with the quarterly inspection performed on the morning of plaintiff's accident and Rogan's daily maintenance of the rugs, precludes a finding of constructive notice as a matter of law. Under Illinois law, public entities that conduct reasonably adequate periodic inspections do not have constructive knowledge of an unsafe condition. Pursuant to §3-102(b):

> A public entity does not have constructive notice of a condition of its property that is not reasonably safe . . . if it establishes either:
>
> (1) The existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate considering the practicability and the cost of the inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property; or
>
> (2) The public entity maintained and operated such an inspection system with due care and did not discover the condition.

745 ILCS §10/3-102(b)(1-2). Here, Rogan and Postmaster Culleton performed a quarterly inspection of the Palatine Post Office on the morning of plaintiff's accident. That inspection included the lobby area, and the specific mat which allegedly caused plaintiff's injury. Their inspection report shows that the floors in the lobby area were in satisfactory condition. Accordingly, the evidence before this Court establishes that the postal service conducted a "reasonably adequate" quarterly inspection which precludes plaintiff's claim. See *id.*

### C. The Open And Obvious Exception

Defendant also seeks summary judgment on the grounds that if the mat were, in fact, flipped over or bunched up, it was an open and obvious condition that plaintiff should have noticed upon entry and taken steps to avoid. In *Ward v. K Mart Corp.*, the Illinois Supreme Court adopted the "open and obvious hazard" exception to the duty of care, set forth in Restatement (Second) of Torts §343, as stated in §343A. 554 N.E.2d 223, 230-32 (Ill. 1990). Accordingly, under Illinois law, "persons or entities who own or control land are not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Sandoval v. City of Chicago*, 830 N.E.2d 722, 727 (Ill. App. Ct. 2005). A condition is open and obvious "when both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Menough v. Woodfield Gardens*, 694 N.E.2d 1038, 1042 (Ill. App. Ct. 1998) (citations omitted). Where a condition is open and obvious, "it is assumed that persons encountering the potentially dangerous condition . . . will appreciate and avoid the risks." *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 836 (Ill. App. Ct. 1996). Plaintiff does not dispute the existence of the open and obvious exception. Rather, plaintiff claims defendant failed to provide sufficient evidence to show that the mat's allegedly defective condition was open and obvious. Therefore, plaintiff contends the exception is not applicable to the present case.

First, plaintiff claims the fact that she did not see the mat demonstrates that the trier of

fact could reasonably conclude that the defect was not open and obvious. Plaintiff does not provide any authority to support this proposition. In fact, plaintiff's argument is contradicted by cases cited in her response in opposition to defendant's motion. *See, e.g. Bucheleres*, 665 N.E.2d at 834, 837-38 (affirming summary judgment against plaintiff swimmers who were injured when they dove into Lake Michigan from concrete sea walls without first checking the depth of the water); *Smolek v. K.W. Landscaping*, 639 N.E.2d 974, 976 (Ill. App. Ct. 1994) (affirming directed verdict against plaintiff in personal injury action who testified that she did not see the hole causing injury because it was concealed by surrounding grass). Defendant counters plaintiff's argument by stating that a reasonable person encountering a bunched industrial sized, heavy, tight weave mat would take steps to avoid the danger. Defendant also points to the absence of any evidence that the mat's condition was concealed or latent. We find these arguments persuasive.

Plaintiff also alleges that the "evidence that other patrons were tripping on the mats" precludes a finding of open and obvious. However, there is no evidence properly before this Court that supports plaintiff's claim that other patrons tripped on the mats.

Next, plaintiff avers that a question of fact exists based on the statement in the O'Neill Affidavit that the condition of the mat was "not open and obvious." A witness "may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Amakua*, 2007 U.S. Dist. LEXIS 49952 at * 34 (internal quotations omitted) (discussing standard for expert testimony under Fed. R. Evid. 704); *see, also Stagman,* 176 F.3d at 995. Accordingly, O'Neill's statement does not create a question of fact regarding the condition of the mat.

Finally, plaintiff contends that even if the mat's condition was open and obvious, summary judgment is not proper because she was distracted. At the time she sustained her injuries, plaintiff was carrying 50-70 envelopes and a purse. Presumably, plaintiff wants this Court to infer

14

that the purse and/or envelopes may have impeded her vision. *See Ward*, 554 N.E.2d at 225-26 (finding defective condition was not open and obvious where plaintiff was distracted by five-foot bathroom mirror that blocked his view of an injury causing concrete post). There is no evidence in the record to support this conclusion.

Plaintiff also claims it was "reasonably foreseeable" that she would be distracted by "displays . . . in the lobby and items or signs . . . on the wall inviting patrons to focus on them" and therefore the Palatine Post Office should have issued a warning or relocated the mat. Under Illinois law, where a condition is open and obvious, a landowner may be liable "when the possessor has reason to expect the invitee's attention may be distracted so that the invitee would not discover the condition despite its obviousness." *Deibert v. Bauer Brothers Const. Co.*, 566 N.E.2d 239, 241-42 (Ill. 1990), *citing* Restatement (Second) of Torts §343A, comment f, at 220 (1965). While plaintiff accurately cites the Illinois Supreme Court's discussion of a landowner's duty of care and the plaintiff's comparative negligence in *Deibert*, she does not explain how that court's holding influences the present case. Unlike the plaintiff in *Deibert*, who testified that he did not see the tire ruts that caused his injury because he was looking up to avoid a known hazard, there is no evidence that plaintiff was distracted by any condition created by defendant. *See* 566 N.E.2d at 240, 243. To the contrary, plaintiff testified that she was not distracted by any signs on the walls prior to the accident and did not know if she went far enough down the post office hallway to see any of the items posted on the walls. Accordingly, plaintiff has not presented any credible evidence that creates a question of fact precluding summary judgment on her claim. *See Sandoval,* 830 N.E.2d at 728 (affirming summary judgment in favor of defendant where plaintiff failed to present evidence to show she was distracted at the time of her fall).

## V.  CONCLUSION

For the foregoing reasons, defendant the United States of America's motion for summary

judgment is granted. It is so ordered.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**DATED: August 19, 2008**